IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **NICOLI ANTONIO SANTANA,** : | |
|     **Plaintiff,** : | |
| : | |
| **v.** : | **CIVIL ACTION NO. 20-CV-1226** |
| : | |
| **BERKS COUNTY JAIL SYSTEM,** *et al.***,** : | |
|     **Defendants.** : | |

## MEMORANDUM

**SCHMEHL, J. /s/ JLS**                                                                                    **July 1, 2020**

      Plaintiff Nicoli Antonio Santana brings this *pro se* civil rights action pursuant to 42 U.S.C. § 1983, against both individual and institutional defendants. (ECF No. 1.) He has also filed a Motion for Leave to Proceed *In Forma Pauperis* and a Prisoner Trust Fund Account Statement. (ECF Nos. 3, 4.) For the following reasons, the Court will grant Santana leave to proceed *in forma pauperis* and dismiss his Complaint in part with prejudice for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and (ii).

    **I.**      **FACTUAL ALLEGATIONS**

      The Complaint names the following Defendants: (1) Berks County Jail System; (2) Janine L. Quigley (Warden of Berks County Jail System); (3) Chief Deputy Warden Smith; (4) K. Kenneth Brown (Assistant District Attorney of Berks County); (5) Captain Castro; (6) S.O.G. Operator Dew; and (7) S.O.G. Operator Amneyhower. Each Defendant is sued in their individual and official capacities. Santana filed this matter based on events which took place while he was confined as a pretrial detainee at the Berks County Jail System. Currently, Santana is incarcerated at SCI-Forest, having been convicted of certain charges including first degree

1

murder, on January 30, 2019.  *See Commonwealth v. Santana*, No. CP-06-CR-0004819-2017 (C.P. Berks Cty.).[1]

Santana alleges that on March 2, 2018, S.O.G. Operator Dew and S.O.G. Operator Amneyhower went to his cell and conducted a search.  (ECF No. 1 at 3.)[2]  When Santana inquired why they were searching his cell, Dew and Amneyhower responded that "they were sent on directive from the administrational staff and orders of the Assistant District Attorney, to confiscate all paper work" in Santana's possession.  (*Id.*)  Santana further inquired whether Dew and Amneyhower had a search warrant, but they responded that "they were within their authority to confiscate" his paperwork.  (*Id.*)  Santana avers that he was "denied the right to be present during the illegal search and seizure of [his] property and was not presented any search warrant authorized by the court to conduct such search and seizure by law."  (*Id.*)

When Dew and Amneyhower completed their search and exited Santana's cell, they were allegedly carrying a stack of papers.  (*Id.*)  Upon returning to his cell, Santana conducted an inventory of his property and "noticed that a lot of [his] legal papers were missing," including "letter heads from [his] attorney and court papers as well."  (*Id.*)  Santana avers that the legal papers confiscated pertained to his "case and strategic defenses that [Santana] was asking [his] attorney to consider for trial."  (*Id.* at 3-4.)  Dew allegedly advised Santana to address any of concerns through the grievance process, and both officers left the block allegedly carrying Santana's legal work with them.  (*Id.* at 4.)

---

[1] Public records indicate that Santana was represented by privately retained counsel during his state court criminal proceedings.  *See Commonwealth v. Santana*, No. CP-06-CR-0004819-2017 (C.P. Berks Cty.).

[2] The Court adopts the pagination assigned to the Complaint by the CM/ECF system.

Santana avers that approximately two to four hours later, Dew returned to his cell with some of the legal work that had been confiscated during the search. (*Id.*) Santana asserts that his legal work had already been copied, handed over to Chief Deputy Warden Smith, and forwarded to Assistant District Attorney K. Kenneth Brown. (*Id.*)

Santana filed an Inmate Grievance Form on March 2, 2018 disputing the search of his cell and confiscation of his legal papers. (*Id.* at 4, 11.) On March 12, 2018, Captain Castro responded to Santana's grievance, indicating that he removed any documents that could be construed as legal documents or legal work before any copies were forwarded to the district attorney's office. (*Id.* at 4-5, 11.) Castro also stated that all copies of legal work were returned to Santana on March 12, 2018. (*Id.*)

In disagreement with the response provided by Castro, Santana filed an appeal to Warden Janine L. Quigley. (*Id.* at 5, 12-21.) On March 28, 2018, Santana received the following response from Warden Quigley:

> Staff involved reported that they copied only materials that were not clearly identifiable legal documents. They only do a cursory scan of the documents - - they do not read them. They then return originals to you within hours. In this case, the Capt. received your grievance before any copies were forwarded. He removed additional copies he thought could be legal materials [and] then he even allowed you to go through the copies [and] pull out (1) or more; only after this process were remaining copies sent out of the jail. You had a chance to review everything before release.

(*Id.* at 5, 12.)

Santana asserts from August 29, 2017 through the present day, the "Berks County Jail System Administration staff, has been acting as a conduit and advocate for the District Attorney office, to illegally and unconstitutionally seize legal documents from pre-trial detainees awaiting trial without proper authorization from the court" and without obtaining a search warrant. (*Id.* 5-6.) Santana further asserts that several grievances and appeals have been filed by pretrial

3

detainees and committed prisoners about the "unlawful and unconstitutional" searches and seizures being conducted by Berks County Jails System's administrative staff at the request of the Berks County District Attorney's Office and the administrative staff has "failed to take reasonable measures to abate the substantial risk of violating" the constitutional rights of prisoners.  (*Id.* at 7.)

The Court understands Santana to be asserting claims based on the alleged unlawful search and seizure of his legal work.  (*Id.* at 8.)  Specifically, Santana avers that the "unlawful search and seizure" has violated his constitutional rights and constituted cruel and unusual punishment under the First, Fourth, Eighth, and Fourteenth Amendments to the United States Constitution.  (*Id.*)  In addition to injunctive relief in the form of an order directing the Berks County Jail System to cease conducting illegal searches and seizures, Santana seeks compensatory damages in the amount of $100,000 against each Defendant as well as $250,000 in punitive damages against each Defendant.  (*Id.* at 9.)

## II.   STANDARD OF REVIEW

The Court will grant Santana leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.[3]  Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) applies, which requires the Court to dismiss the Complaint if it is frivolous or it fails to state a claim.  A complaint is frivolous under § 1915(e)(2)(B)(i) if it "lacks an arguable basis either in law or in fact," *Neitzke v. Williams*, 490 U.S. 319, 325 (1989), and is legally baseless if it is "based on an indisputably meritless legal theory." *Deutsch v. United States*, 67 F.3d 1080, 1085 (3d Cir. 1995).  Whether a complaint fails to state a claim under §

---

[3] However, as Santana is a prisoner, he must pay the filing fee in installments in accordance with 28 U.S.C. § 1915(b).

1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). Conclusory allegations do not suffice. *Id.* As Santana is proceeding *pro se*, the Court construes his allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

### III. DISCUSSION

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "A defendant in a civil rights action must have personal involvement in the alleged wrongs." *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (the personal involvement of each defendant in the alleged constitutional violation is a required element and a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims). Indeed, "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

#### A. Claims Against the Berks County Jail System

Any § 1983 claims against the Berks County Jail System must be dismissed as frivolous because a prison is not a "person" amenable to suit under Section 1983. *Miller v. Curran-Fromhold Corr. Facility*, Civ. A. No. 13-7680, 2014 WL 4055846, at *2 (E.D. Pa. Aug. 13, 2014) (citing *Mitchell v. Chester Cty. Farms Prison*, 426 F. Supp. 271 (E.D. Pa. 1976).

Accordingly, the "Berks County Jail System" is not a proper party to this case. The Court will therefore dismiss Santana's claims against that Defendant with prejudice.

### B. Claims Based on Grievances

In his Complaint, Santana expresses dissatisfaction with the grievance decisions issued by Castro and Warden Quigley. (ECF No. 5-6.) To the extent that Santana alleges a violation of his rights with respect to the denial of his grievance, the claim is not plausible. "Prison inmates do not have a constitutionally protected right to a grievance process." *Jackson v. Gordon*, 145 F. App'x 774, 777 (3d Cir. 2005) (per curiam); *see also Caldwell v. Beard*, 324 F. App'x 186, 189 (3d Cir. 2009) (per curiam). Because there is no right to a grievance process at all, a claim under § 1983 based on the mishandling of a grievance cannot be plausible. Accordingly, any claims based on grievances are dismissed with prejudice under § 1915(e)(2)(B)(ii).

### C. Fourteenth Amendment Claim

Santana asserts a Fourteenth Amendment violation, which this Court interprets as Santana's attempt to bring a claim for deprivation of property without due process of law. (ECF No. 1 at 8.) This claim is not plausible. A prisoner in Pennsylvania cannot state a constitutional claim based on the loss of his property. *See Spencer v. Bush*, 543 F. App'x 209, 213 (3d Cir. 2013) ("'[A]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available.'" (quoting *Hudson*, 468 U.S. at 533)); *Shakur v. Coelho*, 421 F. App'x 132, 135 (3d Cir. 2011) (per curiam) (explaining that the Pennsylvania Tort Claims Act provides an adequate remedy for a willful deprivation of property). *See also Booth v. King*, 346 F. Supp. 2d 751, 759-760 (E.D. Pa. 2004) (citing *Hudson*, 468 U.S. at 531) (finding no violation of the Fourteenth Amendment for

deprivation of property without due process if there exist adequate post-deprivation remedies, which includes a grievance procedure).

Santana alleged he was deprived of his property on March 2, 2018.  His legal papers, however, were returned to him by March 12, 2018.  (ECF No. 4-5, 11.)  Santana has not alleged how he was harmed by that short deprivation.  Moreover, given that Santana had access to grievance proceedings and there exist state tort and common law remedies available to him, his claim under the Fourteenth Amendment for deprivation of property without due process fails. *See Shakur*, 421 F. App'x at 135; *Tapp v. Proto*, 404 F. App'x 563, 567 (3d Cir. 2010) (per curiam) ("[D]eprivation of inmate property by prison officials does not state a cognizable due process claim if the prisoner has an adequate post-deprivation state remedy.")  Accordingly, Santana's claim of deprivation of property without due process does not give rise to a claim for relief.  *See Booth*, 346 F. Supp. 2d at 759-760.

### D. Access to Courts Claim

To the extent Santana is attempting to assert a First Amendment denial of access to courts claim based upon the taking of his legal papers, he has not established a basis for a constitutional violation.  "A prisoner making an access-to-the-courts claim is required to show that the denial of access caused actual injury." *Jackson v. Whalen*, 568 F. App'x 85, 87 (3d Cir. 2014) (per curiam) (quoting *Lewis v. Casey*, 518 U.S. 343, 350 (1996)).  In other words, a prisoner claiming that he was denied access to the courts must allege an injury traceable to the conditions of which he complains.  *Diaz v. Holder*, 532 F. App'x 61, 63 (3d Cir. 2013) (per curiam) (affirming dismissal of denial of access claims where plaintiff failed to tie alleged deficiencies in library to harm in underlying action).  In general, an actual injury occurs when a prisoner demonstrates that a "nonfrivolous" and "arguable" claim was lost because of the denial of access to the courts.

*Christopher v. Harbury*, 536 U.S. 403, 415 (2002).  "[T]he underlying cause of action, . . . is an element that must be described in the complaint."  *Id*.  Furthermore, the right to access the courts may be satisfied if the plaintiff has an attorney.  *Diaz*, 532 F. App'x at 63 (citing *Bounds v. Smith*, 430 U.S. 817, 831 (1977) and *Peterkin v. Jeffes*, 855 F.2d 1021, 1042 (3d Cir. 1988)); *see also Prater v. City of Phila.*, 542 F. App'x 135, 137 n.4 (3d Cir. 2013) (per curiam).

Santana was represented by counsel throughout his state criminal proceedings.  *See Commonwealth v. Santana*, No. CP-06-CR-0004819-2017 (C.P. Berks Cty.).  Moreover, he has not identified any nonfrivolous and arguable claim that was lost because of the alleged seizure of his legal papers.  Accordingly, the claim must be dismissed as implausible under § 1915(e)(2)(B)(ii).

### E.  Eighth Amendment Claim

To the extent that Santana asserts a violation of the Eighth Amendment by alleging that the unlawful search and seizure of his legal work constituted "cruel and unusual punishment," Santana has failed to set forth a plausible claim.  (ECF No. 1 at 8.)  As Santana was a pretrial detainee at the time of the alleged illegal search, and not a convicted prisoner, the Eighth Amendment is not implicated.  *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979) (pretrial detainees are protected from "punishment" by the Due Process Clause of the Fourteenth Amendment).  The Eighth Amendment governs claims brought by convicted inmates challenging their conditions of confinement, while the Due Process Clause of the Fourteenth Amendment governs claims brought by pretrial detainees.  *Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005).

In order to state a proper claim, a detainee must assert that prison officials acted with deliberate indifference, meaning that they consciously disregarded a serious risk to the detainee's health or safety.  *See Wilson v. Seiter*, 501 U.S. 295, 298-99 (1991); *see also Wilson v. Burks*,

423 F. App'x 169, 173 (3d Cir. 2011) (per curiam) ("'[T]he official must both be aware of facts from which the inference could be drawn that a substantial harm exists, and he must also draw that inference.'") (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).  Santana has not stated a plausible constitutional violation because he has not alleged that the confiscation of his legal papers, which were subsequently returned, amounted to punishment, deprived him of a basic need, or otherwise caused him harm.  For all of the foregoing reasons, any claims made based on an alleged illegal search and seizure will be dismissed with prejudice.

### F. Official Capacity Claims

Santana's official capacity claims against all Defendants are not plausible.  Claims against officers named in their official capacities are indistinguishable from claims against the municipality that employs them.  *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690, n. 55 (1978)).  "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."  *Id.*  "Pennsylvania county offices . . . are treated as municipalities for purposes of *Monell*."  *Hatfield v. Berube*, 714 F. App'x. 99, 102 n.1 (3d Cir. 2017) (citing *Mulholland v. Gov't Cty. of Berks, Pa.*,706 F.3d 227, 237 (3d Cir. 2013)).

As Santana has not pled a basis for municipal liability, his official capacity claims are not plausible.  To plead a basis for municipal liability under § 1983, a plaintiff must allege that the municipality's policy or custom caused the violation of his constitutional rights.  *See Monell*, 436 U.S. at 694.  "To satisfy the pleading standard, [the plaintiff] must . . . specify what exactly that custom or policy was."  *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009). "'Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy

9

with respect to the action issues an official proclamation, policy, or edict.'" *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). "'Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'" *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)). A plaintiff illustrates that a custom was the proximate cause of his injuries by demonstrating that the defendant "had knowledge of similar unlawful conduct in the past, failed to take precautions against future violations, and that its failure, at least in part, led to his injury." *Id.* (internal quotations and alterations omitted).

A plaintiff may also state a basis for municipal liability by "alleging failure-to-supervise, train, or discipline . . . [and alleging facts showing] that said failure amounts to deliberate indifference to the constitutional rights of those affected." *Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019). "This consists of a showing as to whether (1) municipal policymakers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Id.*

Here, Santana asserts that prison officials have "been acting as a conduit and advocate for the District Attorney office, to illegally and unconstitutionally seize legal documents from pre-trial detainees awaiting trial without proper authorization from the court" and without obtaining a search warrant. (ECF No. 1 at 5-6.) While Santana may be attempting to allege a policy or custom, his current allegations are not plausible to proceed with an official capacity/*Monell* claim. However, because the Court cannot say at this time that he will never be able to allege a plausible claim, this portion of Santana's Complaint will be dismissed without prejudice and he

will be granted leave to file an amended complaint if he is capable of curing the defects the Court has identified.

### G. Fourth Amendment Claim[4]

Santana alleges that the search of his cell and confiscation of his legal documents constitutes a violation of his Fourth Amendment right against unreasonable search. (ECF No. 1 at 8.) Specifically, Santana avers that Dew and Amneyhower were sent on directive from the administrational staff and orders of District Attorney Brown to confiscate all paperwork in Santana's possession. (*Id.* at 3.)

Generally, challenges made to the search of a prison cell on Fourth Amendment grounds are not plausible because "prisoners have no legitimate expectation of privacy and . . . the Fourth Amendment's prohibition on unreasonable searches does not apply in prison cells." *Hudson v. Palmer*, 468 U.S. 517, 530 (1984); *Doe v. Delie*, 257 F.3d 309, 316 (3d Cir. 2001) ("The Supreme Court has concluded that the Fourth Amendment right to privacy, to be free from unreasonable searches, is fundamentally inconsistent with incarceration."); *Crosby v. Piazza*, 465 F. App'x 168, 172 (3d Cir. 2012) (the Fourth Amendment right to be free from unreasonable searches and seizures does not apply to an inmate's prison cell or personal property, including

---

[4] In his Complaint, Santana appears to be asserting claims on behalf of others by averring that "pre-trial detainees and committed prisoner's [sic] will continue to have their constitutional rights violated" by "illegal search and seizure's [sic] being conducted per the request of the District Attorney Office . . . without proper authorization from the court" by way of search warrant. (ECF No. 1 at 6.) "Although an individual may represent herself or himself *pro se*, a non-attorney may not represent other parties in federal court." *Murray on behalf of Purnell v. City of Philadelphia*, 901 F.3d 169, 170 (3d Cir. 2018); *see also* 28 U.S.C. § 1654; *Twp. of Lyndhurst, N.J. v. Priceline.com, Inc.*, 657 F.3d 148, 154 (3d Cir. 2011) ("[A] plaintiff must assert his or her own legal interests rather than those of a third party" to have standing to bring a claim (quotations omitted)); *Osei-Afriyie ex rel. Osei-Afriyie v. Med. Coll. of Pa.*, 937 F.2d 876, 882-83 (3d Cir. 1991) (a *pro se* litigant who is not an attorney may not pursue claims on behalf of anyone other than himself). Accordingly, any claims made by Santana on behalf of others will be dismissed with prejudice.

legal papers); *Molina v. Wenerowicz*, Civ. A. No. 12-5824, 2016 WL 6876319, at *4 (E.D. Pa. Nov. 22, 2016).

The foregoing Fourth Amendment analysis is established by the underlying penological purpose of maintaining safe and secure prisons and jails. In that context, cell searches are deemed reasonable, "valid and necessary to ensure the security of the institution and the safety of inmates and all others within its boundaries." *Hudson*, 468 U.S. at 529. In this matter, however, Santana avers that the search was undertaken because District Attorney Brown directed Dew and Amneyhower to confiscate his paperwork. (ECF No. 1 at 3.) In other words, it appears from the allegations in Santana's Complaint that the search of his cell was conducted for purposes unrelated to penological issues.

Some jurisdictions have found that a pretrial detainee does retain a legitimate expectation of privacy in his or her cell in the wake of *Hudson*, especially when the prosecution orders the search for the sole purpose of collecting evidence. For example, the United States Court of Appeals for the Second Circuit has held that "a pre-trial detainee does retain Fourth Amendment protection against searches 'at the instigation of non-prison officials for non-institutional security related reasons.'" *See United States v. Cohen*, 796 F.2d 20, 22-24 (2d Cir. 1986). In *Cohen*, the Second Circuit determined that the "Supreme Court in *Hudson* did not contemplate a cell search intended solely to bolster the prosecution's case against a pre-trial detainee awaiting his day in court. . ..." *Id.* at 23; *see also Reid–Douglas v. Harding*, Civ. A. No.10-2049, 2014 WL 3507292, at *7-9 (M.D. Pa. July 14, 2014) (affirming validity of Fourth Amendment claim for cell search of pretrial detainee, but granting qualified immunity because there that constitutional right was not clearly established at the time of the search).

Taking the allegations in his Complaint as true, and it appearing for screening purposes that the search of Santana's cell may have been undertaken for reasons unrelated to prison security or the safety of the inmates, Santana may proceed on his Fourth Amendment claims against District Attorney Brown[5] and Correctional Officers Dew and Amneyhower at this time.

## IV. CONCLUSION

The Court will grant Santana leave to proceed *in forma pauperis* and dismiss the following claims for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and (ii): (1) all claims against the Berks County Jail System; (2) all claims based on grievances; (3) all claims based on the Eighth and Fourteenth Amendments; and (4) all claims based on denial of access to the courts. The Court will dismiss these claims with prejudice because any attempt at amendment would be futile. Berks County Jail System will be terminated as a Defendant. Santana's official capacity claims against all Defendants other than the Berks County Jail System are dismissed without prejudice. Santana will be given an opportunity to file an amended complaint in the event he can cure the deficiencies in his official capacity claims. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002). If he chooses not to file an amended

---

[5] While prosecutors are entitled to absolute immunity from liability under § 1983 for acts that are "intimately associated with the judicial phase of the criminal process" such as "initiating a prosecution and . . . presenting the State's case," (*see Imbler v. Pachtman*, 424 U.S. 409, 430-431 (1976)), a prosecutor does not have absolute immunity when performing the traditionally investigative functions of law enforcement. *Buckley v. Fitzsimmons*, 509 U.S. 259, 276 (1993) (considering whether prosecutors actions in determining whether bootprint at scene of crime was that of suspect was an investigatory, administrative, or prosecutorial function, and holding that "[w]hen the functions of prosecutors and detectives are the same, as they were here, the immunity that protects them is also the same."); *Carter v. City of Philadelphia*, 181 F.3d 339, 356 (3d Cir. 1999) (noting that "a prosecutor acting in an investigative or administrative capacity is protected only by qualified immunity) (citations omitted). Since District Attorney Brown is alleged to have ordered the search for investigative purposes, the claim against District Attorney Brown is plausible for purposes of § 1915 screening.

complaint, the Court will direct service on his remaining claims, *i.e.*, his Fourth Amendment claims against District Attorney Brown and Correctional Officers Dew and Amneyhower only. An appropriate Order follows.

**BY THE COURT:**

**/s/ Jeffrey L. Schmehl**
**JEFFREY L. SCHMEHL, J.**